## TAYLOR *v.* STATE.

### Opinion delivered July 3, 1911.

1. HOMICIDE—PROVOCATION OF ASSAULT—SELF-DEFENSE.—One who provokes or invites an attack or brings on a combat can not be excused or justified in killing his assailant for the purpose of saving his own life or preventing great bodily harm until he has in good faith withdrawn from the combat and done all in his power to avoid the danger and avert the necessity of killing. (Page 580.)

2. APPEAL AND ERROR—HARMLESS ERROR.—Where the undisputed evidence shows that defendant was guilty of manslaughter, and the jury gave him the lowest punishment for that offense, no error in the court's instructions could have been prejudicial. (Page 581.)

Appeal from Woodruff Circuit Court, Northern District; *Hance N. Hutton,* Judge; affirmed.

*S. Brundidge, Jr.,* and *Harry Neelly,* for appellant.

Deceased was not acting in self-defense when he stepped back and attempted to draw his pistol for the purpose of shooting appellant, because he had struck him in a sudden quarrel. 93 Ark. 414; 84 Ark. 121; 49 Ark. 543. And the mere fact that appellant in a sudden quarrel had struck deceased did not cause him to forfeit his right to defend his life in the event it should afterwards become necessary to do so. 62 Ark. 286, 307.

*Hal. L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellee.

If there is any error in any of the instructions relative to either degree of murder, that error is not prejudicial because appellant was only convicted of manslaughter, and there can be no reversal on account of error in instruction unless prejudicial error should be found in some of the instructions stating the law with reference to the crime of manslaughter.

The correct rule of law is fairly deducible from the instructions given, viz.: one who is the aggressor is required, in good faith to withdraw from the conflict. If he does not, but kills his adversary, he is guilty of some degree of murder, depending upon the proof. If, being the aggressor, he voluntarily withdraws, in good faith seeking to decline further combat, and is followed by his adversary, who repels the original assault with more force than is necessary, he is guilty of manslaughter if he kills him, unless without fault or carelessness on his part the killing seems to be necessary to save his own life or prevent his receiving great bodily harm, and the killing is only resorted to after he has done all in his power consistent with his safety to avoid the danger and avert the necessity for the killing. 62 Ark. 286; 93 Ark. 409; 95 Ark. 428. A killing is only justifiable when necessary. 74 Ark. 431. And no killing is necessary when that necessity is produced by the unlawful act or acts of the slayer; but, having invited the assault and created the necessity for the killing, it becomes his duty to abandon the combat and do all he can to avoid the necessity and remove the cause for the taking of human life. Kirby's Dig., § 1765; 73 Ark. 568; *Id.* 399; 69 Ark. 558. "Where the slayer brought on or provoked the difficulty, the extent of his danger or the nature of the extremity to which he was reduced is of no consequence in considering the question of self-defense." Wharton on Homicide, (3 ed.) (Bowlby) 504; 95 Mo. 155; 107 Mo. 543; 109 Cal. 451; 10 Col. 566; 15 O. St. 47; 104 Tenn. 132. Where one seeks another with the intention of provoking a difficulty and carries his intention into effect, he can not avail himself of the right of self-defense. 20 Ia. 108; 97 Mo. 105; 41 Minn. 365.

HART, J. The defendant, John P. Taylor, was indicted for the crime of murder in the first degree, charged to have been committed by killing one Jim Cain. He was tried by a jury, and convicted of manslaughter, his punishment being assessed at the term of two years in the State penitentiary.

Cain and Taylor lived on adjoining places near the town of McCrory, in Woodruff County, Ark. Cain was moving to the town, and, after his household effects had been moved, he sent Porter and Taylor back to take some wire off the fence. They took it all off except some on the side fence, which some of the

witnesses for the State say Taylor's wife told them not to move. Cain and Taylor were not on good terms any way, and a dispute arose between them as to just what Mrs. Taylor did say. On the morning afterwards, Cain and Taylor had some words about the matter, and that afternoon they met again to settle what Mrs. Taylor had said. Bishop and Porter each told his story about the matter, and Cain and Taylor got to talking about it. Cain said: "There is a lie out somewhere." Taylor answered: "You don't meant to say that my wife lied, do you?" Cain replied: "There is a lie out somewhere, and my boys have proved out of it." Thereupon Taylor walked up, and hit Cain on the forehead with his fist. Cain stepped back, put his hand in his vest, and attempted to draw a pistol. Immediately after Cain stepped back, Taylor pulled his pistol and shot Cain. According to the State's witnesses, Cain never succeeded in drawing his pistol from the scabbard, and after the first shot began to back away, and Taylor fired four or five shots altogether, and Cain continued to retreat until the last shot was fired. One of the State's witnesses, upon being asked the question: "How long a time elapsed from the time he (Taylor) struck Mr. Cain with his fist and the time he fired the pistol?" answered: "Well, just long enough for him to get his gun out." Three pistol wounds were found on the body of Cain. One bullet entered the upper part of the arm between the elbow and the shoulder, three inches below the shoulder. The next entered at the arm-pit, and came out under the left arm. One of the bullets went in his back. There were two points of exit of the bullets about the left nipple. One bullet was located in the arm. This, in substance, is the testimony of one of the witnesses for the State. Several other persons were present, and in the main corroborated his testimony. Taylor testified for himself. He said that he was town marshal of McCrory at the time Cain was killed, and had been for more than a year. That a long time before this trouble came up Cain had got it in for him, and tried to have him discharged as marshal. After detailing the trouble about the wire and what Porter and Bishop said about it, Taylor said that he walked over to McBurnett's horse and commenced talking to him. He was playing with the strings on the saddle, and Cain said she (referring to Mrs. Taylor) said it. Taylor then walked up to Cain and

asked him if he intended to call his wife a liar, and Cain answered: "Yes." In regard to what then happened we quote from the abstract of Taylor's counsel, his testimony as follows:

"I slapped at him open-handed, and he stepped back two steps or more, and I thought it would be just a good old friendly fist fight. He stepped back, and threw his hand up and unbuttoned his vest one or two buttons and run his hand in this way, and pulled up that gun until I seen it between the cylinder and the sight, and he made another jerk, and when he did I fired and stopped, and when he kept on pulling at the gun, I made the other three shots, and he never did cease pulling it. I walked up to McBurnett, and said, 'I will surrender.' When I quit he was still pulling at it, and he kept on, just kept on pulling and dodging. Somebody told me not to shoot or not to do that any more, and McBurnett jumped off of his horse, and I gave him my pistol. I made no effort to get my pistol until he ran his hand in there; not until he showed me his pistol. I did not know he was armed until I saw the gun. I never shot Cain when he was retreating from me with his hands up; he was coming straight all the time. He was closer when I fired the last shot than when I fired the first, something like four feet. I shot at him to save my own life. He was pulling that gun, and the thought never entered my mind to kill him until he fell. The reason I came to have the pistol was that there was a couple of negroes rowing round Sunday, and I had arrested them Monday, and they went over to Parkdale. I was marshal, and had two warrants in my pocket, and aimed to go down to Mr. Johnson's place. I did not carry it for the purpose of having a difficulty. At the time I went down there I did not expect to have any difficulty with Cain. We had never had any unpleasantness. He fought me politically and in the council, but we mixed and passed pleasantly. I never heard Cain say: 'Don't shoot me.' The only statement I heard him make was: 'Don't come at me,' or 'I will fix you.' I could not tell what it was. I think McBurnett made the statement about not shooting, practically after the last shot was fired. He was sitting on his horse. It seemed like he made his horse jump in, and he hit the ground on his feet. Anyway I saw him standing there, and I offered to surrender to him. About the time I made the first shot, Cain had probably made one or two steps. Being under a

great deal of excitement, I don't know; but when he made these steps towards me, still pulling at his pistol, I made the other shots pretty quick. I fired once, and hesitated, and then three times as fast as I could pull the trigger. He was within four or five feet of me when I fired the last shot, still pulling the pistol. I tried to surrender there; and when he wouldn't take me, I walked up the street and met June Dallas and surrendered to him."

Other witnesses who were present corroborated his testimony, but it is not necessary to set out their testimony, for the version of the killing as testified to by Taylor himself is the most favorable to him.

We are of the opinion that, under Taylor's own testimony, he is guilty of manslaughter. He admits that he was the aggressor. He brought on the combat by striking Cain in the face. As stated in the case of *Carpenter* v. *State,* 62 Ark. 307: "After having provoked or invited the attack, or brought on the combat, he can not be excused or justified in killing his assailant for the purpose of saving his own life, or preventing a great bodily harm, until he has in good faith withdrawn from the combat, as far as he can, and done all in his power to avoid the danger and avert the necessity of killing. If he has done so, and the other pursues him, and taking of life becomes necessary to save life or prevent a great bodily injury, he is excusable."

When Taylor struck Cain, thus bringing on the difficulty, and saw that Cain was about to draw a pistol, he was in the attitude where he should have done everything in his power by retreat, by disclaimer, or otherwise, to show Cain that it was his intention in good faith to withdraw from the combat. The undisputed evidence shows that quite a number of persons were present, all of whom well knew the parties in the difficulty, and who might have interposed to stop any further controversy, had Taylor in any way manifested his intention to withdraw from the combat. Taylor did not attempt to withdraw from the combat, and did nothing, either by word or act, to show his adversary his intention to do so. On the contrary, he stood his ground, made no disclaimer, and did not otherwise indicate his intention of withdrawing from the combat, but pulled his own pistol and began shooting at the deceased. Having been the aggressor and having done nothing to show his intention of abandoning the combat

he is not in the attitude to invoke the right of self-defense. *Nobel v. State,* 75 Ark. 248, and the cases cited above.

Because the undisputed evidence shows that Taylor was guilty at least of manslaughter, and because the jury gave him the least punishment for that offense, no error in the instructions of the court could be prejudicial to his right, and it is well settled that this court reverses only for prejudicial errors. *Daniel* v. *State,* 76 Ark. 84.

No assignments of error or no giving and refusing instructions are pressed upon us for reversal, and the judgment will be affirmed.