## JOHNSON *v.* STATE.

### Opinion delivered July 10, 1911.

1.   ARREST—AUTHORITY TO MAKE.—An officer can make an arrest for a misdemeanor only when a warrant has been placed in his hands or where the offense is committed in his presence.    (Page 142.)

2.   HOMICIDE—SELF-DEFENSE.—Where an officer, without having a warrant, undertook to arrest A, mistaking him for B, whom he suspected of having committed a misdemeanor, and, upon A's resisting, shot and killed A,

without notifying him that he was an officer, he can not plead self-defense if he made no effort to withdraw from the encounter which he had brought on. (Page 142.)

3. APPEAL AND ERROR—WHEN ERRORS HARMLESS.—Where, on appeal from a conviction of manslaughter, defendant's own testimony shows that he was guilty of murder in the second degree, he can not complain of errors in the rulings of the trial court. (Page 143.)

Appeal from Jackson Circuit Court, *R. E. Jeffery,* Judge; affirmed.

### STATEMENT BY THE COURT.

Appellant, George Johnson, was indicted by the grand jury of Jackson County for the crime of murder in the second degree, the indictment charging him, in proper form, with the killing of one John Duncan. The appellant himself testified as follows: "Was out in Richwoods looking for some fellows that had been doing some fighting, and had a bench warrant for Horace Luster, charging him with the crime of carrying a pistol. Luster and the deceased had been in a fight out there at Richwoods, and had come back over here together. They had been running together. I drove up in front of the Duncan house, and when I got out of the buggy the deceased ran out of the back way, and I saw him and his brother in there together, and I thought it was the Luster boy. They (the people) told me they were over there together. I did not pay any attention to John Duncan, at least, I thought I wasn't, but he ran out of the back way and through a cotton field and through some sorghum cane, and I followed him. I was a right smart piece behind him, and as I ran into the cotton field I think I fired three shots into the ground, trying to stop him—just fired to scare him. When he got to the fence to go into the big road, he seemed to be trying to get a gun or something, and I told him not to pull any gun on me. He pointed the gun at me, and I holloed to him to drop the gun, but he never did it, and I shot at him across the top of the cotton. I did not try to kill him. I tried to hit him in the leg. He didn't throw the gun down, and I shot a second time, when he threw the gun down at the end of the cotton row and then went over the fence and down to the house 75 or 80 yards. He was standing 60 or 80 feet from the fence when I shot. I got him at the house and put the handcuffs on him.

Don't remember just what he said; I think he said wait until
his father came. I thought all the time it was Luster that I
was after; didn't know Luster; had a description of him, and
they told me he was the bigger of the two. Had a bench war-
rant for Luster. Didn't shoot him for the purpose of making
the arrest; shot him because he drew a gun on me; saw the
pistol; gave it to Mr. Neal, the sheriff. At the time all this
happened, I was deputy sheriff of Jackson County. I was
told that Luster was at Mr. Duncan's, the father of the de-
ceased. That is the reason I drove down in front of Duncan's
and stopped my horse. I holloed at the fellow that was run-
ning to halt; took my pistol out about a hundred yards from
the house; shot twice at him. I didn't keep the handcuffs
on him long."

The jury returned a verdict against appellant finding him
guilty of voluntary manslaughter, and assessing his punish-
ment at three years' imprisonment in the State penitentiary.
Judgment was pronounced accordingly, and this appeal has
been duly prosecuted.

*Jones & Campbell*, for appellant.

The evidence concerning transactions after the shooting
was prejudicial. 66 Ark. 499; 69 Ark. 558; 79 Ark. 85. The
defendant was denied a substantial right by not permitting
all of his statement to go to the jury. 69 Ark. 599. The
argument of State's counsel was highly prejudicial. 93 Ark.
443; 48 Ark. 106; 41 Wis. 282; 77 Ark. 64; 63 Ark. 174. The
court has no discretion to withhold instructions appropriate
to any theory of the cause sustained by competent evidence.
82 Ark. 499; 57 Ark. 57; 29 Ark. 248; 80 Ark. 439.

*Hal L. Norwood*, Attorney General, and *W. H. Rector*,
Assistant Attorney General, for appellee.

The appeal should be dismissed because the transcript
was not filed within the time prescribed by law. Kirby's
Dig., sec. 2596.

The argument of counsel, complained of was nothing more
than the expression of an opinion, and could not result in
prejudice. 88 Ark. 62; 84 Ark. 131; 95 Ark. 548; 71 Ark. 62;
72 Ark. 461. Appellant can not complain of any action of the
court in excusing or refusing to excuse any of the talesmen,

because the record does not show that he had exhausted all of his challenges.   93 Ark. 168;  91 Ark. 585;  50 Ark. 492; 69  Ark.  322.

WOOD,  J.,  (after  stating  the  facts).   Various  assignments of error were contained in the motion for a new trial, but we deem it unnecessary to discuss any of these, because, in our opinion, the testimony of appellant himself, which states the case in the most favorable light that it can be considered in his behalf, makes him guilty of murder in the second degree, and he therefore cannot complain of a verdict of the jury that convicts  him  of  manslaughter.   According  to  appellant's testimony, he was seeking to arrest one Luster, and through mistake  killed  John  Duncan,  under  the  circumstances  detailed by him, because he believed that Duncan was Luster, and that Luster was attempting at the time to shoot him.   But, if the deceased,  Duncan,  had  been  Luster  in  fact,  still  appellant, under the facts stated by him, could not have set up the plea of self-defense in taking the life of Luster, but would have been guilty  of  murder  in  the  second  degree  in  so  doing.   Through appellant's  own  negligence  and  violation  of  the  statute,  he brought on the necessity for the shooting which he says he did in order to prevent the deceased from killing him.   Appellant says:  "I didn't shoot him for the purpose of making the arrest; shot him because he drew a gun on me."   A peace officer can only make an arrest for a misdemeanor where a warrant is placed in his hands, or, without a warrant, where the offense is committed in his presence.   Sec. 2119, subdivisions first and second, Kirby's Digest.   The statute requires that no unnecessary force or violence shall be used in making an arrest, that the person making the arrest shall inform the person about to be arrested of the intention to arrest him and  the offense charged against him, for which he is arrested, and, if acting under a warrant of arrest, shall give information thereof, and, if required, show the warrant.  Secs. 2123 and 2124, Kirby's Digest.   The appellant  did  not  observe  these  statutory  requirements  in attempting to make the arrest.   He was not even armed with a warrant for the deceased.   It was not shown that the deceased and Luster bore any resemblance to each other.   Appellant did not attempt to inform Duncan, supposing him to be Luster, that he had a warrant for him or of his intention

to arrest him.   He did not say to him, when he saw that Duncan had drawn his pistol, that his only purpose was to arrest him for carrying a pistol.    The conduct of appellant, in short, amounted to criminal carelessness, and was wholly unjustifiable in an officer of the law, and was such as to imply malice on the part of appellant.   It showed a reckless disregard of human life, and what the jury might have considered a wicked and abandoned disposition.   As an officer of the law, his supreme desire should have been to protect, rather than to take the life of, the one whom he was seeking to arrest.   His own evidence shows that he shot at deceased because he supposed that the deceased was intending to shoot him, but he had made no effort, by peaceful means and as the law directs, to withdraw from the encounter which he had brought on.   The case is ruled by the principle announced by this court in the recent case of *Taylor* v. *State*, 99 Ark. 576, where Mr. Justice HART, speaking for the court, said:

"We are of the opinion that, under Taylor's own testimony, he is guilty of manslaughter. He admits that he was the aggressor; he brought on the combat by striking Cain in the face.   As stated in the case of *Carpenter* v. *State*, 62 Ark. 307:   'After having provoked or invited the attack or brought on the combat, he cannot be excused or justified in killing his assailant for the purpose of saving his own life or preventing a great bodily injury until he has in good faith withdrawn from the combat as far as he can, and done all in his power to avoid the danger and avert the necessity of killing.'   Because the undisputed evidence shows Taylor was guilty at least of manslaughter, and because the jury gave him the least punishment for that offense, no errors in the instructions of the court could be prejudicial to his rights, and it is well settled that this court reverses only for prejudicial errors.   *Daniel* v. *State*, 76 Ark. 84."

So we say here, because appellant's own evidence in its most favorable light shows him to be guilty of a higher crime than that for which he was convicted, he has no grounds for reversal for any of the alleged errors in the rulings of the court set forth in his motion for a new trial.   The judgment is right, and it is therefore affirmed.