McDONALD *v.* STATE.

Opinion delivered July 8, 1912.

1. HOMICIDE—SEPARATE INDICTMENTS—JOINT TRIAL.—Where two persons were separately indicted for the same murder, it was not error by consent to try them jointly. (Page 318.)

2. SAME—SELF-DEFENSE—WHEN DEFENSE AVAILABLE.—Before the plea of self-defense is available to a charge of murder, it must have appeared to the defendant, not only that danger to him at the hands of deceased was imminent, but that it was so pressing and urgent that to save himself from immediate death or great bodily harm the killing of the deceased was necessary. (Page 321.)

3. SAME—SELF-DEFENSE—NECESSITY OF ACT.—One is not justified in killing another unless he used reasonable means within his power and consistent with his safety to avoid danger and avert the necessity of the killing. (Page 321.)

4. SAME—SELF-DEFENSE—PURSUIT OF ADVERSARY.—Where a person makes a violent and felonious assault on another, the latter, if free from fault, need not retreat, but may stand his ground, and may even pursue his assailant if he is apparently withdrawing merely for the purpose of seeking a better position to renew the combat; but if he had withdrawn in good faith, the person assaulted had no right to continue the pursuit. (Page 321.)

5. APPEAL AND ERROR—WHEN ERRORS HARMLESS.—Where defendant's own testimony shows that he was guilty of murder, and he was convicted of manslaughter, errors committed in the trial were not prejudicial. (Page 322.)

Appeal from Scott Circuit Court; *Daniel Hon,* Judge; affirmed.

*Cravens & Cravens, Edwin P. Hardin* and *Edwin Hiner.*

1. It was error to consolidate the causes. 1 Bish. New Cr. Pr. § 1043; 25 Mo. 174; 71 *Id.* 180.

2. Defendant was entitled to twenty peremptory challenges aside from those allowed John McDonald. Bish. Cr. Pro. vol. 1, § 1042; 5 S. & R. 59.

3. Evidence of threats was clearly admissible. 55 Ark. 598.

4. Evidence of former difficulty was clearly admissible. The presumption of innocence follows throughout the trial.

*Hal L. Norwood,* Attorney General, and *Wm. H. Rector,* Assistant, for appellee.

1. The causes were properly consolidated. Besides, he consented. 93 Ark. 168; 1 Bish. New Crim. Pro. § 1018; Kirby's Digest, § 2343; 71 Ark. 180; Kirby's Dig., § § 2219, 2229; 73 Ark. 150; 73 *Id.* 407; 74 *Id.* 355.

2. The testimony as to threats was properly excluded. 84 Ark. 128; 73 *Id,* 152.

3. The motion for new trial is too indefinite to challenge the instrucrions. 34 Ark. 737; 65 *Id.* 521; 75 *Id.* 111.

Frauenthal, J. An indictment was returned against Dick McDonald for the crime of murder in the first degree, charging him with killing Bert Cantrell by shooting him with a pistol. His brother, John McDonald, was also charged with being a party principal in the commission of the same homicide, and a separate indictment was returned against him for murder in the first degree. Both the defendants, as well as the State, agreed that the charges brought separately against them should be consolidated and tried together. An order to that effect was made by the court, and they were thereupon tried jointly. The jury returned a verdict convicting the defendant Dick McDonald of manslaughter and assessing his punishment at confinement in the State penitentiary for a term of two years.

It is urged that the court erred in permiting the cases against the two defendants to be consolidated for trial, although done with their consent. We do not think that there is any merit in this contention. The court had jurisdiction to try the charges made by the indictments against these parties, and had obtained jurisdiction over the persons of both of them. The defendants were charged with the commission of the same crime, and, although they were indicted separately, they could also have been indicted jointly therefor.

All persons who participate in the commission of a crime are subject to prosecution and punishment therefor as if each of them had alone perpetrated the whole. All or any number of those participating in the crime may be charged together in one indictment, or, if the prosecuting officers so elect, each of the participants may be indicted separately. Joyce on Indictments, § 424; 1 Bishop, New Crim. Pro., § 463.

If the parties are indicted jointly, then they may be tried jointly. At common law, persons jointly indicted were

not entitled to separate trials as a matter of right; the permission to sever the trials was left to the sound discretion of the court for cause shown. *United States* v. *Merchant,* 12 Wheat. 480. By our statute, however, it is provided that persons jointly indicted for a crime are entitled to separate trials; and by virtue of said statute they are entitled to separate trials as a matter of right. Kirby's Digest, § 2343. However, if neither of the defendants jointly indicted nor the State's attorney requires a separate trial, then such persons are rightly tried together. The trial, whether separate or joint, where all the defendants are charged as participants in the commission of the same crime, is a matter of procedure which does not affect the jurisdiction of the court. The defendants who are indicted jointly for the same offense may, by not requiring it, dispense with the right given them by statute to separate trials. Likewise, if charged by separate indictments for the same offense, they may, by express consent given thereto, be tried jointly therefor.

The defendant in his motion for new trial has assigned a number of errors which he claims were committed in the trial of the case, and some of them are urged by his counsel upon this appeal as grounds why the judgment should be reversed. These relate chiefly to rulings made relative to the introduction of testimony and instructions given and refused. We do not deem it necessary, however, to discuss or pass upon any of these alleged errors, for the reason that in our opinion the undisputed evidence in the case makes the defendant guilty of a higher degree of homicide than that of voluntary manslaughter.

The testimony on the part of the State tended to prove the following facts: About an hour before the killing, the deceased, Bert Cantrell, had gone to a store situated in the city of Fort Smith at the corner of Towson Avenue and South J Street, and was on the outside of the store watching two young men who were catching a ball. It was on the afternoon of June 2, 1911, and Cantrell was in his shirt sleeves. He was leaning against a box watching the play when defendant, his brother, John McDonald, and a third party named Henry Johnson, rode up in a buggy. The defendant got out of the buggy, and called to the deceased to come to him. As

Cantrell went towards him, the defendant drew a pistol, and thereupon Cantrell turned and ran into the store, with the defendant pursuing him. About the time Cantrell ran into the front door, the defendant fired at him. Cantrell ran through the store to a door in the rear side, and defendant by that time had gotten near the middle of the store, when he fired at him again. As Cantrell went out of the rear door, the defendant fired a third time at him. After getting out the rear door, Cantrell fell, about sixteen feet from the store; and there was some testimony showing that after he had fallen the defendant shot him again and either turned his head over with his foot or kicked him in the face as he lay upon the ground. There were seven wounds on his body, made by three or four of the shots which took effect. Some of these entered in the rear of his thigh, and the fatal wound entered his back, ranging through his brain and skull. The testimony on the part of the State tended also to prove that Cantrell was unarmed, and had nothing in either hand as he ran from defendant and through the store; and at no time made any demonstration to do the defendant any injury.

The defendant testified that some years before the killing the deceased and his brother had a difficulty with him in which he was shot; that later the deceased had exhibited ill-feeling towards him, and that a short time before the killing he had threatened him and spoken to him in an angry manner. He stated that his brother and Johnson were going in the buggy to see a horse which Johnson had to sell or trade, and requested him to go with them. In doing so, they passed the store where deceased was. He testified: "When I got to J Street, right at Moore's store, I was on the left-hand side. The first thing I noticed, just as I got to the store, I saw somebody run up the sidewalk, and throwed my eyes that way, and saw Bert Cantrell coming towards me with his hand in his bosom, and I just grabbed the lines and said, 'Stop, there, Bert, or I will kill you'; and by that time he had his gun clear out. The buggy passed by, and left nothing between me and Cantrell, and I throwed down on him, and he made a kind of wheel and went inside the store. I throwed down and shot. He run inside of the door, and I followed him right in, and just as I got inside I fired another shot at him. He still had his gun in his

hand and was running." He further stated that when he got near the back door he fired the third shot as deceased went out of the door, and that these were all the shots that he fired.

The defendant seeks to justify or excuse this homicide on the ground of self-defense. The plea of self-defense is founded solely on the principle of necessity. Before this plea is available in this case, it must have appeared to the defendant not only that danger to him at the hands of the deceased was imminent, but that it was so pressing and urgent that to save himself from immediate death or great bodily harm at his hands the killing of Cantrell was necessary, and that he acted in good faith under that apprehension, and not in a spirit of revenge. *Carpenter* v. *State*, 62 Ark. 286; *Felker* v. *State*, 54 Ark. 489; *Duncan* v. *State*, 49 Ark. 543; *Palmore* v. *State*, 29 Ark. 248.

The defendant must have used all reasonable means within his power, and consistent with his safety, to have avoided such danger and averted the necessity of killing Cantrell before he can base his justification or excuse for the homicide on the ground of self-defense. If a violent and felonious assault was made upon him by Cantrell when the defendant was free from fault, the law did not require him to retreat, but he was justified under such circumstances in standing his ground; and if Cantrell manifestly intended by violence to take his life or to do him great bodily harm, then he was not required to suspend his defense if Cantrell was withdrawing apparently for the purpose of seeking a better position from which to renew the combat. Under such circumstances the defendant was justified in pursuing his adversary until he had secured himself from all danger. *Luckinbill* v. *State*, 52 Ark. 45; *Green* v. *State*, 45 Ark. 281; *LaRue* v. *State*, 64 Ark. 144. But if Cantrell had manifestly endeavored to withdraw in good faith from the combat, even if he was the assailant, and the danger had ceased to be immediate, urgent and pressing, then the defendant had no right to make or continue the pursuit, and could not justify a killing made under such circumstances on the ground of self-defense. *Green* v. *State, supra; Luckinbill* v. *State, supra.*

According to the testimony of the defendant himself, the

deceased never fired a shot. If he first ran towards the buggy, making a demonstration against the defendant, it appears from defendant's own testimony that he himself pulled the lines and stopped the horse and left the buggy, and then went towards the deceased, and thus voluntarily entered the combat. If the deceased was the first to draw a pistol, and was the assailant, he immediately thereafter fled without firing a shot, and retired to a great distance from the conflict. If it can be said that the defendant feared that his adversary ran into the store in order to seek a more advantageous position for the purpose of renewing the combat, and for that reason that he was justified in pursuing him, it can not be said from his own testimony that there was any immediate danger to him after deceased had run through the store and went out the door in the rear. According to the testimony of the defendant, the deceased was fleeing for safety, and withdrawing in good faith from the contest, and the defendant still pursued him, and as deceased fled through the rear door again fired on him. At that time any danger to the defendant, if it ever existed, had ceased. The shot that he then made, and his subsequent acts, could not possibly have been in self-defense. The undisputed evidence, then, shows that the defendant was guilty of a crime higher than that of manslaughter; and he received the lowest punishment for that offense. No errors complained of, therefore, could be prejudicial to his rights, even if such were made, and defendant has no just grounds to ask for a reversal of the judgment adjudging him guilty of manslaughter. *Taylor* v. *State,* 99 Ark. 576; *Johnson* v. *State,* 100 Ark. 139.

The judgment is affirmed.