WATSON *v.* STATE.

Opinion delivered June 25, 1928.

*W. H. Neal, I. S. Simmons, J. P. Clayton* and *C. M. Wofford,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

WOOD, J. C. J. Watson was indicted in the Crawford Circuit Court for the crime of murder in the first degree in the killing of one Jim Jackson. He was also indicted for the crime of murder in the first degree in the killing of one Henry Hamm. There was a change of venue to the Ozark District of Franklin County, where Watson was tried for killing Jim Jackson. He was convicted of murder in the second degree, and sentenced

by judgment of the court to imprisonment in the State Penitentiary for a period of twenty-one years, from which judgment is this appeal.

1. On the 26th day of November, 1927, appellant filed his petition for a change of venue, in which he set up, among other things, that the sheriff of Crawford County—who would have to summon the necessary panel of jurors to try appellant—and his deputies were prejudiced against the appellant, and that the minds of the inhabitants of Crawford County were so prejudiced against him that he could not obtain a fair and impartial trial in that county. He therefore prayed "that he be granted a change of venue to some other county of this circuit most convenient to all parties and where defendant can most nearly obtain a fair and impartial trial." On the day the petition was filed the court granted same, and ordered the cause transferred to the Ozark District of Franklin County, and set the same for trial on December 13, 1927. On the 28th of November, 1927, the appellant moved the court to quash the order granting the change of venue and transferring the cause to the Ozark District of Franklin County. He set up in this motion that he did not know, at the time of filing his motion for a change of venue, that there would be a special term of court in the Ozark District of Franklin County on December 13, 1927; that the shooting which resulted in the deaths of Henry Hamm and Jim Jackson and in the wounding of Bird Walker, deputy sheriff of Franklin County, occurred on the line between Crawford and Franklin counties; that the sheriff of Franklin County and Bird Walker, his deputy, were in the posse which captured the appellant, and they at the time shot at and tried to kill the appellant; that the sheriff of Franklin County and his deputy were material witnesses against the appellant; that the deceased parties were reared in Franklin County and had many near relatives and close friends in that county; that the killing had been widely discussed throughout that county, and appellant believed that the minds of the inhabitants

of that county were so prejudiced against him that it would be impossible for him to obtain a fair and impartial trial therein. He further set forth that the sheriff of that county and his deputies would have to summon the jurors necessary to try the appellant. Appellant alleged that he believed that the adjourned term of the Ozark District of Franklin County Circuit Court had been fixed in order that the appellant might be taken to the Ozark District of Franklin County for trial in case the venue was changed. Appellant therefore prayed the court to quash the order directing the change of venue to the Ozark District of Franklin County and set the cause for hearing in the Crawford Circuit Court.

The court overruled the motion of appellant to be allowed to withdraw his motion for a change of venue, and refused to annul its former order transferring the case to Franklin County. On the 13th day of December, 1927, the appellant filed his motion to dismiss the cause for want of jurisdiction in the Franklin Circuit Court. He attached to this motion the motion he had filed in the Crawford Circuit Court asking to be permitted to withdraw the motion for a change of venue and that the cause be tried in the Crawford Circuit Court. He therefore prayed that the cause be dismissed in the Franklin Circuit Court and transferred back to the Crawford Circuit Court for trial. The court overruled the motion. At that adjourned term of the court there was a mistrial of the cause, and the same was continued and set for trial February 23, 1928.

On February 23, 1928, the motion to dismiss for want of jurisdiction was renewed. In this motion the appellant again set up the former allegations to dismiss for want of jurisdiction, setting up that the order transferring the cause to the Ozark District of the Franklin Circuit Court was erroneous, and, under the circumstances, did not give that court jurisdiction, and appellant prayed that the cause, for the reasons before stated, be transferred to the Crawford Circuit Court. The motion to dismiss in the Franklin Circuit Court for

alleged want of jurisdiction in that court was signed by appellant's attorneys. The motion to dismiss the cause in the Ozark District of the Franklin Circuit Court and to transfer the same to the Crawford Circuit Court was overruled. The appellant duly objected and excepted to all the above rulings. Such rulings are assigned as error in appellant's motion for a new trial, and he contends that the judgment should be reversed on account of such rulings.

The petition of appellant for change of venue was made to the court in term time, and the order of the Crawford Circuit Court granting the prayer of the petition did not became a final order until the adjournment of the court. *Wells Fargo & Co.* v. *Baker,* 107 Ark. 415, 155 S. W. 122, and cases there cited; *Spivey* v. *Taylor,* 144 Ark. 301, 222 S. W. 57. This rule applies to orders directing the change of venue as well as to any other order of the court. In 15 R. C. L., 688, it is said:

"All courts of record have inherent power to vacate or set aside their judgments or orders during the term at which rendered. This is a power of daily exercise by the courts, and its existence, within proper limitation of time and propriety, cannot be questioned; it is based upon the substantial principles of right and wrong, to be exercised for the prevention of error and injury, and for the furtherance of justice."

Therefore the circuit court of Crawford County had not lost jurisdiction to entertain the appellant's motion to withdraw his petition for change of venue and to annul the order directing a transfer of the case to the Franklin Circuit Court. The petition for change of venue from the Crawford Circuit Court, alleging that the minds of the inhabitants of Crawford County were so prejudiced against the appellant that he could not obtain a fair and impartial trial therein, was duly verified by the appellant himself and was supported by the affidavit of two persons. The prayer of the petition was that the change be made to some other county of the circuit "most convenient to all parties and where defendant

could most nearly obtain a fair and impartial trial.'' The petition for change of venue set up that certain articles exceedingly derogatory to the appellant had been published by the press of Van Buren, a newspaper at Mulberry, in Crawford County, in Fort Smith papers, and the Arkansas Gazette, which were calculated to poison the minds of the inhabitants of Crawford County against the appellant. Some of these articles were attached to and made a part of the petition.

The record shows that the court, after hearing the argument of counsel and being well and sufficiently advised, sustained the motion for change of venue, and transferred the cause to the Ozark District of Franklin County, which was doubtless known by the court to be most convenient to all the parties, as set up in the prayer of the petition. Two days thereafter the appellant and his counsel changed their minds, and, after they discovered that there was an adjourned term of the Ozark District of Franklin Circuit Court to meet on December 13, 1927, they asked to withdraw the petition for change of venue and to have annulled the former order transferring the cause, and that the cause be tried by the Crawford Circuit Court. This written motion, signed by counsel for the appellant and verified by him, was not supported by the affidavit of any one else. Nor were the motions of appellant in the Franklin Circuit Court to dismiss the cause in that court and transfer the same back to the Crawford Circuit Court supported by the affidavit of two credible persons, as the statute in change of venue cases requires.

Now it occurs to us that the court did not err in its rulings. The court, at the instance of the appellant, had granted his solemn petition for change of venue, duly verified by himself and supported by the affidavit of two credible witnesses, as required by statute. Two days thereafter the court was requested by the appellant to annul this solemn judgment and let the cause be tried in the Crawford Circuit, where it originated. The affidavit of the two affiants and the newspaper publications and

other circumstances that convinced the court that a fair and impartial trial could not be had in Crawford County were not changed or withdrawn. The court was justified in finding that there were no sufficient grounds stated and proved to justify the court in annulling its former order changing the venue. Changes of venue are exceedingly important orders. Petitions for same should not be presented except in the utmost good faith on the part of the defendant and counsel representing him. The court has the right to assume that the accused and his counsel have made all the necessary investigation of the circumstances as to the terms of court in other counties and as to the prejudice of the minds of the inhabitants in the county where the cause originates and as to all conditions making a change of venue necessary, before a petition for such change is presented. Defendants can not play fast and loose with the court in the matter of petitioning for change of venue. "Statutes authorizing changes in venue are not intended to give a defendant the right to shift the venue back and forth at will, with incidental delays in trying him. Statutes authorizing change of venue are undoubtedly enacted in order to promote the ends of justice, and, unless abused, are reasonably calculated to secure that aim. A tendency has been displayed, however, to make use of the privilege of change to obstruct and delay the progress of litigation, and consequently the courts have felt impelled to lay down certain rules as to the appropriate time for seeking the removal of a cause." 27 R. C. L., page 820, §§ 39 and 40.

If the minds of the inhabitants of Crawford County were so prejudiced against the appellant that he could not obtain a fair and impartial trial in that county, as his petition, duly verified by himself and his supporting witnesses, set forth, and as the court found to be the fact, there was nothing in the motion of appellant, filed two days after the petition was granted, to show that there had been any change in the condition of the minds of the inhabitants of Crawford County in that respect... After

the cause was transferred to the Ozark District of Franklin County the appellant did not petition for a change of venue from that county to a county in the district other than Franklin and Crawford. Appellant's motion to dismiss the cause for want of jurisdiction in the Franklin Circuit Court was, in effect, tantamount to another motion for a change of venue from Franklin County, but the motion did not comply with the statute requiring petitions for change of venue to be supported by the affidavit of two credible persons. Section 3088, C. & M. Digest. It set forth that the persons whom the appellant killed were reared in the Ozark District of Franklin County, and had many relatives there, and also that appellant was indicted for an assault upon Bird Walker, a deputy sheriff of the Ozark District of Franklin County. But none of these were grounds for a change of venue. Nor was it a ground for change of venue that the sheriff of Franklin County and his deputy were prejudiced against the appellant, if that were a fact. For the statute makes ample provision for designating other officers or persons to summon jurors where a reason exists for designating other officers or persons. Section 3147, C. & M. Digest. There was no error in the rulings of the trial court in the matter of change of venue.

2. Appellant was on trial for the killing of Jim Jackson and Henry Hamm. Henry Hamm was the city marshal of the town of Mulberry, in Crawford County, and Jackson was assisting him at the time they were killed in attempting to arrest the appellant. Appellant, in company with his wife, had run his truck against a truck of one Jim Wood, on a bridge about a mile west of Mulberry; he had cursed Wood and shot through the front of his car. Wood reported the matter to Bruce Jackson, a deputy sheriff, and he and Bruce Jackson, without procuring a warrant, went out to arrest the appellant. They met appellant on his way into Mulberry in his truck. Appellant was armed. He stopped Wood and Jackson, and cursed Wood. They went away and left him, and appellant went on to town. When appel-

lant drove into Mulberry, he stopped his truck within a few feet of the curb, and Henry Hamm stepped up to the car and said something to him. Appellant pointed his pistol at Hamm, and commanded him to hold up his hands, and took Hamm's revolver from him, and advised him not to follow him when he left town going back toward Mulberry Creek, where appellant was camped. After appellant took Hamm's pistol, Hamm procured a double-barrel shotgun, and he and Jim Jackson followed appellant out to the bridge, where the killing occurred. Hamm and Jackson did not procure a warrant for appellant's arrest. When they overtook the appellant he turned and met them. They told him to give up, but, instead of doing so, he engaged in battle by firing at the officers, and they in turn fired at him, resulting in the killing of Hamm and Jackson.

Without setting out in detail the testimony, the above is substantially the testimony of witnesses for the State to the shooting. The appellant testified, in substance, that the testimony of the witnesses for the State was all false, and that he killed Hamm and Jackson in self-defense, after they had first attacked him without attempting to arrest him. The above sufficiently sets forth the testimony upon which the court instructed the jury, at the instance of the appellant, in instructions numbered A, B and F, and on its own motion F 2, as follows:

"A. You are instructed that it is the duty of an officer in making an arrest to inform the person about to be arrested of the intention to arrest him, the offense charged against him for which he is arrested, and, if acting under a warrant of arrest, to give information thereof, and, if required, to show the warrant. No unnecessary force or violence shall be used in making an arrest.

"B. You are instructed that a peace officer can only make an arrest for a misdemeanor without a warrant where the offense is committed in his presence. If the offense is not committed in his presence, it is neces-

sary that a warrant be procured before the arrest is legal.

"F. You are instructed that in this case, if you find that the officer, Henry Hamm, assisted by Jim Jackson, went out to Little Mulberry Bridge, near Mulberry, for the purpose of arresting the defendant, C. J. Watson, on an alleged misdemeanor only, and that they attempted to make this arrest without a warrant, and if you find from the evidence that the defendant committed a misdemeanor in the presence of the officer, Henry Hamm, on the streets of Mulberry, then he had the right as an officer to pursue the defendant immediately and arrest him for said misdemeanor, but in doing so he could not shoot him or inflict any great bodily injury upon the defendant, unless it were necessary in his own self-defense.

"F 2. You are instructed that if Jim Jackson and Henry Hamm were not, at the time of the killing, acting in the capacity of officers of the law, with the right so to act, no account should be taken of the fact that they were officers, if you find they were, and that is not a circumstance to be considered by the jury, unless the officers, if they were such, had the right to act in that capacity and were so acting at the time."

The appellant contends that the court erred in not giving his prayers for instructions numbered C, D, E, G, H, and I on the subject of arrest. We will not unduly extend this opinion by setting out these prayers for instructions because, after a careful consideration of same, we are convinced that such of them as were correct declarations of law were fully covered by prayers for instructions asked by the appellant, above set forth, which the court granted, and other instructions on self-defense given on the court's own motion. The appellant contends that the jury were not told in any of these instructions that the appellant had the right to resist an illegal arrest or that the officers had no right to shoot him or to do any great bodily injury in attempting to arrest him, whether with or without a warrant. But when instruction F 2, given by the court on its own

motion, is considered in connection with the instructions given by the court on self-defense, which were correct, it is impossible for any prejudice to have resulted to the appellant in the ruling of the court of which he complains. The instructions given on the subject of arrest correctly declared the law as it has often been announced by this court. *Roberson* v. *State,* 53 Ark. 516, 14 S. W. 902; *Johnson* v. *State,* 100 Ark. 139, 139 S. W. 1117; see also *Adams* v. *State,* 176 Ark. 916, 5 S. W. (2d.) 946. The court ruled correctly in not repeating instructions on the same subject. *Griffin* v. *State,* 160 Ark. 166, 254 S. W. 469.

3. In addition to self-defense, the appellant also defended on the ground that, at the time of the killing, he was insane. The testimony adduced by the appellant on this issue was sufficient to warrant the court in submitting the issue to the jury. The appellant requested the court to grant certain prayers for instructions on this issue, which we deem it unnecessary to set forth, because the court fully and correctly instructed the jury on the issue of insanity, declaring the law on this subject in conformity with the opinion of this court in *Bell* v. *State,* 120 Ark. 530, 180 S. W. 186, and as supplemented by the opinion in *Hankins* v. *State,* 133 Ark. 38, 201 S. W. 832, L. R. A. 1918B, 784.

The instructions on the issue of insanity followed closely the law applicable to such issue as declared by this court in *Bell* v. *State, supra.* It could serve no useful purpose to reiterate the law announced in that case and in *Hankins* v. *State, supra.* The appellant objected generally to the instruction given by the court, and specifically to that part of the instruction relating to emotional and moral insanity. The appellant contends that there was no definition of emotional or moral insanity. But on examination of the instruction we find that the court in the instruction told the jury that "the fact that one's reason is temporarily dethroned by anger, jealousy or any other passion, or the fact that he has become suddenly depraved to such an extent that his conscience

ceases to control or influence his actions, is not a defense to criminal charge. In other words, what is commonly known as emotional or moral insanity is not a defense under the law of this State for one charged with crime." The instruction on the proposition of emotional and moral insanity thus conformed to the law as declared by the court in *Bell* v. *State, supra,* and was a sufficiently explicit definition of emotional and moral insanity.

There are no reversible errors in the rulings of the trial court. The judgment therefore must be affirmed.