KORSAK v. STATE.

4218                                  154 S. W. 2d 348

Opinion delivered October 6, 1941.

*Sidney Kelley,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

SMITH, J. This appeal is from a judgment sentencing appellant to a term of ten years in the penitentiary for the crime of carnal abuse.

There appears to be but little, if any, question as to his guilt, and the sufficiency of the testimony to support the conviction is not questioned.

At the trial certain letters were offered in evidence which had been written by appellant while confined in jail to the girl he had carnally known.

These letters, while intended by appellant to be confidential, were not privileged communications. The child was not his wife, but, even had she been, the letters,

having been intercepted, were admissible. *Hendrix* v. *State,* 200 Ark. 973, 141 S. W. 2d 852.

Upon the introduction of these letters counsel for appellant suggested they were the productions of an insane person, and the plea of not guilty was changed to one of insanity, and the request was made that appellant be sent to the State Hospital for Nervous Diseases for observation and report, as provided by § 3913, Pope's Digest. This motion was denied, on the ground that no intimation had been given by appellant's attorney prior to the trial that the question of appellant's insanity would be raised, and that the plea came after the jury had been impaneled, sworn to try the case, and the greater part of the testimony on the part of the state introduced.

We think no error was committed in this respect. It was said in the case of *Whittington* v. *State,* 197 Ark. 571, 124 S. W. 2d 8, that the purpose of § 3913, Pope's Digest, the provisions of which appellant sought to invoke, was to furnish a means for the examination of one who gave notice to the court that he pleads or intends to plead insanity as a defense to the crime charged, or where the court has reasonable information from some reliable source that the accused was insane at the time that the alleged unlawful act was committed or had become insane since that time.

Through failure to invoke the provisions of § 3913, Pope's Digest, in the time and manner required by law, appellant lost the right to have the examination into his mental condition made, for which that section of the statutes provides; but the question of his sanity was, nevertheless, submitted to the jury. This is admitted, but the insistence is that the instructions submitting that question to the jury were not correct declarations of the law on the subject. This, in our opinion, is the only important or difficult question in the case.

Upon this issue the court charged the jury as follows:

"The burden of proving the insanity of the defendant devolves upon the defendant to show his insanity by a preponderance of the evidence unless the testimony on the part of the state shows such insanity by a preponderance of the testimony.

924

"Before insanity would be a defense it would be necessary for you to believe by a preponderance of the evidence that the defendant was in such condition of mind at the precise time of the commission of the alleged act as not to know the consequences of his act or not to know right from wrong, or if he did know the consequences of his act, and did know right from wrong, that he was incapable of choosing between the right and the wrong, and further you must believe that that condition, if you believe it did exist, was due to a mental disease of the mind, because if such condition or conditions, if it did exist or if they did exist, was due to immoral depravity or a lascivious attitude it would not constitute such insanity nor would it excuse the commission of the act. It is only such mental conditions that are caused by mental disease or diseases of the mind that do excuse on the ground of insanity."

Upon the giving of this instruction counsel for appellant remarked: "I believe the court told the jury that if it was caused by any immoral causes it wouldn't be a defense. It seems to me that it would be a defense if it was from any cause." Thereupon the court proceeded to charge the jury further as follows: "Gentlemen of the jury: The court intended to make it clear to you that the defense of insanity is a legal defense and to make clear to you that the mental condition of the defendant may be such as to make it the duty of the jury to acquit him, but the court intended to make clear to you that whatever mental condition did exist, it must exist because of the disease of the mind before it would be sufficient to constitute a defense and the court intended to make clear to you that mere immorality or lasciviousness impelling one to commit an act not due to a disease of the mind, would not be a defense."

The distinction which the court made is one which exists in the law. If a man's mind becomes so diseased that he is insane (as that term is defined in numerous cases, such, for instance, as *Bell* v. *State,* 120 Ark. 530, 180 S. W. 186; *Hankins* v. *State,* 133 Ark. 38, 201 S. W. 832, L. R. A. 1918D, 784; *Watson* v. *State,* 177 Ark. 708, 7 S. W. 2d 980, 59 A. L. R. 356), even though the diseased

condition of the mind resulted from private vices, he is excused. But, if his mind becomes disordered, so that he loses control of himself, through passion, suddenly or violently aroused, whether that passion be of an amorous nature or the result of hate, prejudice or a desire for revenge, he is not an insane person within the meaning of the law. For instance, a man might have a provocation, apparently sufficient to make the passion irresistible, and, under the influence of this passion, kill another. But he is not excused on that account. He would under § 2981, Pope's Digest, be guilty of voluntary manslaughter. A man might voluntarily drink intoxicants, or voluntarily take drugs, until, while, under the influence of the intoxicant or the drug, he becomes irresponsible and unaware of his conduct. Yet, he is not excused from the effect of his conduct under those conditions.

A headnote to the case of *Byrd* v. *State,* 76 Ark. 286, 88 S. W. 974, reads as follows: "2. As the specific intent to kill is unnecessary in murder in the second degree under our statute, if one voluntarily becomes too drunk to know what he is about, and then without provocation assaults and beats another to death, he commits murder in the second degree, just as if he were sober."

So, a man might indulge and cherish a lascivious inclination until the desire to gratify it becomes irresistible, and thus become amorously crazed and be impelled by this passion to commit such a crime as rape or carnal abuse; but he is not to be excused on that account. He may be excused as an insane person only when his mind has become diseased and, because of this disease, he has lost the power to distinguish between right and wrong or, as the court told the jury in the instruction above copied, he is incapable, because of the diseased condition of his mind, of choosing between the right and the wrong.

But if one's conduct was not induced by this mental condition, but from the excitation of the lower passions, whether of hate, prejudice, desire for revenge, or lascivious desire, he is responsible for his act. Frenzy is not insanity.

Read together in their entirety, we think this is the purport of the instructions given by the court, and they are, therefore, not erroneous.

The subject of insanity as a defense to the charge of the commission of a crime was exhaustively reviewed by Mr. Justice Wood in the case of *Bell* v. *State, supra,* and this has become a leading case on the subject. The learned justice there said: ". . . if insanity is interposed as a defense such defense cannot avail unless it appears from a preponderance of the evidence, first, that at the time of the killing the defendant was under such a defect of reason from disease of the mind as not to know the nature and quality of the act he was doing; or, second, if he did know it that he did not know that he was doing what was wrong; or, third, if he knew the nature and quality of the act, and knew that it was wrong, that he was under such duress of mental disease as to be incapable of choosing between right and wrong as to the act done, and unable, because of the disease, to resist the doing of the wrong act which was the result solely of his mental disease."

The subject was again reviewed with equal care by the same learned justice in the case of *Hankins* v. *State, supra,* and both of those cases were reviewed by the same writer in the still later case of *Watson* v. *State, supra,* where it is said: "The instructions on the issue of insanity followed closely the law applicable to such issue as declared by this court in *Bell* v. *State, supra.* It could serve no useful purpose to reiterate the law announced in that case and in *Hankins* v. *State, supra.* The appellant objected generally to the instruction given by the court, and specifically to that part of the instruction relating to emotional and moral insanity. The appellant contends that there was no definition of emotional or moral insanity. But on examination of the instruction we find that the court in the instruction told the jury that 'the fact that one's reason is temporarily dethroned by anger, jealousy or any other passion, or the fact that he has become suddenly depraved to such an extent that his conscience ceases to control or influence his actions, is not a defense to criminal charge. In other words, what

is commonly known as emotional or moral insanity is not a defense under the law of this state for one charged with crime.' The instruction on the proposition of emotional and moral insanity thus conformed to the law as declared by the court in *Bell* v. *State, supra,* and was a sufficiently explicit definition of emotional and moral insanity.''

No error appears, and the judgment must be affirmed. It is so ordered.